[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
This is an action by the Federal Deposit Insurance Corporation (FDIC) as receiver of the New Connecticut Bank and Trust Company, N.A. (New CBT) against Napert-Boyer Partnership (Napert-Boyer) and one of its general partners, George K. Boyer (Boyer), based on two promissory notes executed by the defendants in favor of FDIC and New CBT's predecessor, the Connecticut Bank and Trust Company, N.A. (CBT). A trial was held on August 24, 1994, at which several exhibits were received and at which Thomas R. Roth, vice president of the Recall Management Corporation, testified for the plaintiff and Boyer testified for the defendants.
Based on the evidence, the Court finds as follows:
On or about August 26, 1988, Napert-Boyer entered into a construction loan with CBT pursuant to which CBT agreed to loan Napert-Boyer up to $8,800,000 to construct an elderly congregate housing project. Napert-Boyer executed a promissory note in the amount of $8,800,000 in favor of CBT and granted it a first mortgage on the project.
Napert-Boyer experienced problems with the project, however, and, at its request, the parties executed a loan modification agreement on October 10, 1989, pursuant to which CBT provided Napert-Boyer with an additional $1,000,000 revolving line of credit. Napert-Boyer and Boyer executed a $1,000,000 promissory note in favor of CBT and granted it a second mortgage on the project. Under the terms of this agreement, Boyer also became a co-maker of the original $8,800,000 promissory note, and CBT also refinanced a personal line of credit to Boyer, who executed a $300,000 promissory note in favor of CBT.
Following defaults by the defendants, CBT filed this action seeking originally to foreclose only its second mortgage on the project and to obtain a judgment on the $300,000 note executed by Boyer.
On January 6, 1991, CBT was determined to be insolvent and FDIC was appointed as receiver. FDIC caused a creation of a "bridge bank", New CBT, and it transferred all of the assets at issue in this case to new CBT. On January 11, 1991, FDIC dissolved New CBT and took control of the assets at issue in CT Page 9339 this case. It has been substituted as the proper party plaintiff.
In 1991, this Court permitted the plaintiff to proceed with its foreclosure action, and, following the entry of a default against the defendants, a judgment of strict foreclosure was granted. Following the upholding of that judgment on appeal and the resetting of the defendants' law days, title to the project vested in FDIC as receiver on March 30, 1993. To resolve the FDIC's subsequent motion for a deficiency with respect to the $1,000,000 note and mortgage, the parties stipulated that the fair market value of the project was equal to the sum of the debt due on the $1,000,000 note plus the outstanding real estate taxes on the project.
FDIC amended its complaint in November of 1993 to include only a count for the foreclosure of the $1 million second mortgage on the project (which has already been adjudicated), a count seeking to recover on the $8,800,000 note and a count seeking to recover on the $300,000 note. It was the second and third counts that were the subject matter of the trial held on August 24, 1994.
As to the $8,800,000 note, the Court finds from the evidence and testimony presented at trial that Napert-Boyer executed the note, and Boyer eventually became a co-maker, thus becoming jointly and severally liable for this indebtedness. The Court further finds that funds were advanced pursuant to this note but were not repaid. As of the date of the trial, the following amounts were due and owing under the note:
 Principal $ 7,608,714.42 Interest 3,432,843.97 Default interest 594,148.45 Late charges 180,730.90
TOTAL $11,816,437.74
In their "proposed findings of fact and conclusions of law", the defendants claim for the first time that the $8,800,000 and $1,000,000 notes constitute a single debt upon which the plaintiff may not collect based on the previous judgment of strict foreclosure. This argument was not raised in any of the defendants' responsive pleadings and is not timely now. One of the purposes of our Rules of Procedure is CT Page 9340 to provide opposing parties with fair notice of the legal theories relied upon. The defendants offer no reason why, having not raised this issue in their responsive pleadings, they should be permitted to do so now.
Moreover, even if the claim were timely, it has not been supported by the evidence adduced at trial. The $8,800,000 note was a separate obligation and transaction from the $1,000,000 note, and FDIC has not in any way waived its right to collect on this note by foreclosing on the mortgage securing the $1,000,000 note.
With respect to the interest charged on the outstanding principal balance, even though CBT ceased to exist, FDIC is permitted to substitute a commercially reasonable prime rate in place of the one referenced in the note's language. See FDICv. 272 Post Road Associates, 5:91CV-433 (TFGD) (D. Conn. April 14, 1994); FDIC v. Cage, 810 F. Sup. 745 (S.D. Miss 1993);FDIC v. Condo Group Apartments, 812 F. Sup. 694, 699 (M.D. Tex. 1992); FDIC v. Blanton, 918 F.2d 524 (5th Cir. 1990). FDIC has used the prime rate of Fleet Financial Group in computing the interest due on CBT's receivership obligations, a procedure which this Court finds to be commercially reasonable.
As to the $300,000 note, the Court finds that Boyer executed that note in favor of CBT, that funds were advanced pursuant to this note, but not repaid, and that FDIC now holds the note as receiver. As of the date of trial, the following amounts were due and owing:
 Principal $ 300,000 Interest 136,581.31 Default interest 43,925 Late charges 4,218.56
TOTAL $ 484,727.87
The defendants have alleged that CBT breached its obligation of good faith and fair dealing. Assuming, without deciding, that such a special defense is not barred by theD'Oench, Duhme doctrine [D'Oench, Duhme Company v. FDIC,315 U.S. 447 (1942)], or by 12 U.S.C. § 1823(e), the defendants have presented no credible evidence suggesting improper conduct by the bank. The site simply proved to be more difficult to develop than the defendants anticipated, and the defendants CT Page 9341 were also victimized by a waning condominium market. The special defenses, even if legally viable, are not factually supported by the evidence, and the defendants' counterclaims, based on the same factual allegations, are also not supported by the evidence.
The defendants' claim of set-off is undermined by their previous stipulation that the fair market value of the project was equal to the sum of the indebtedness found to be due and owing by this Court in the foreclosure judgment plus the amount of real estate taxes owed on the project at that time. By entering into that stipulation, the defendants are estopped to argue that there is any remaining equity to be applied to any other indebtedness owed to FDIC. Moreover, it appears that the principal balance due on the $8,800,000 note has already been reduced by a credit of nearly $1,200,000.
The plaintiff has established the fact of the indebtedness and its amount by a fair preponderance of the evidence, and the defendants have failed to sustain their burden of proof with respect to their special defenses, counter-claim and set off. Judgment may therefore enter against the defendants for the full amount due and owing under the $8,800,000 note and the $300,000 note, to wit, $11,816,437.74 and $484,727.87, respectively, for a grand total of $12,301,165.61, exclusive of FDIC as Receiver's costs of collection and attorney's fees.
Jonathan E. Silbert, Judge